[No. F004807. Fifth Dist. Aug. 7, 1985.]

CLYDE CHURCHILL, as Agricultural Commissioner, etc., Plaintiff and Respondent, v.
JACK C. PARNELL, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Denis D. Smaage, Deputy Attorney General, for Defendants and Appellants.

Lita O'Neill Blatner, County Counsel, Robert L. Felts, Principal Deputy County Counsel, and Dwight V. Nelsen, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**BEST, J.**—The issue in this case is whether title 3, California Administrative Code, section 6616 (hereinafter section 6616), is applicable to the State of California and to state agencies.

In June 1984, the Department of Fish and Game of the State of California, pursuant to an announced program for the management of the species of fish known as white bass, made multiple applications of the pesticide Rotenone to waters and waterways in the County of Tulare.

The white bass management program was initiated because the department had determined that white bass, which had been illegally introduced into the Kaweah Reservoir and other waters in Tulare County, constituted a threat to the salmon, steelhead and striped bass fisheries because if introduced into the waters of the San Joaquin-Sacramento Delta, they would migrate upstream to northern California rivers to feed on young salmon, steelhead and striped bass.

Pursuant to a petition filed by the Agricultural Commissioner of the County of Tulare, the superior court issued a peremptory writ of mandate commanding the department to obtain the consent "from the owners and operators of any portion of water or land [to be] treated before . . . any application of any pesticide" is made as required by section 6616 which provides, "No person shall directly discharge a pesticide onto a property without the consent of the owner or operator of the property."

The department contends that the word "person" as used in section 6616 does not include the state or state agencies engaged in a valid pest eradication program. If otherwise construed, argues the department, section 6616 would authorize any property owner where a dangerous pest might be found to veto a valid state pest eradication program. We must, then, determine whether section 6616 is applicable to agencies of the State of California.

We begin our discussion by noting the following provisions of the Fish and Game Code: "The protection and conservation of the fish and wildlife resources of this state are hereby declared to be of utmost public interest. Fish and wildlife are the property of the people and provide a major con-

tribution to the economy of the state as well as providing a significant part of the people's food supply and therefore their conservation is a proper responsibility of the state. This chapter is enacted to provide such conservation for these resources." (Fish & G. Code, § 1600.)

"The department may take any fish which, in its opinion, is unduly preying upon any bird, mammal, or fish. The commission may prescribe the terms of a permit to take any fish which, in the opinion of the department, is harmful to other species of fish and which should be reduced in numbers." (Fish & G. Code, § 5501.)

"'Take' means hunt, pursue, catch, capture, or kill, or attempt to hunt, pursue, catch, capture, or kill." (Fish & G. Code, § 86.)

In 1984, the Legislature enacted Assembly Bill No. 2131 as an urgency measure. The facts constituting the necessity that the bill take effect immediately were, in part, as follows: "The introduction of an exotic species of fish into the delta system would place the anadromous fishery of the Sacramento-San Joaquin Delta in serious jeopardy. . . ." (Stats. 1984, ch. 85, § 12.)

That the Legislature considers white bass to be an "exotic species of fish" is demonstrated by Fish and Game Code section 6400.5, which provides in pertinent part: ". . . it is unlawful to transport or possess any live white bass (Marone chrysops), whether taken within or without the state, unless it is first submitted for inspection to, and written permission is obtained from, the department." (Added by Stats. 1984, ch. 1686, § 4.)

Whether section 6616 applies to the state depends on if the state is considered a "person" within the meaning of the food and agricultural regulation. Section 6616 does not apply to the state or government specifically; by its terms, section 6616 only prevents a "person" from applying pesticides without consent. Furthermore, section 38 of the Food and Agricultural Code defines "person" as a firm, corporation, company or association. (Food & Agr. Code, § 38.)

A special rule of statutory construction is established in California law regarding when the state may be considered a person within the confines of a particular statute. ■ "[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. (*Estate of Miller* (1936) 5 Cal.2d 588, 597 [55 P.2d

491]; *Balthasar* v. *Pacific Elec. Ry. Co.* (1921) 187 Cal. 302, 305 [202 P. 37, 19 A.L.R. 452].) But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.'" (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 536 [131 Cal.Rptr. 228, 551 P.2d 844]; *Siegel* v. *City of Oakland* (1978) 79 Cal.App.3d 351, 356-357 [145 Cal.Rptr. 62]; *Grier* v. *Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 333 [127 Cal.Rptr. 525].) ■ According to this rule, since the words of section 6616 are general, the word person does not encompass the government. However, this general rule will only apply if holding the state to the terms of section 6616 will infringe upon the sovereign governmental powers of the state. The defendants argue the application of section 6616 to the state would infringe upon the state's police power to eradicate dangerous pests. We agree.

■ As noted in Witkin's Summary of California Law, "It has been said that the police power is simply the power of sovereignty or power to govern—the inherent reserved power of the state to subject individual rights to reasonable regulation for the general welfare." (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 435, p. 3734.)

■ It is clear beyond dispute that in the proper exercise of its police power the state may abate or eradicate any species of insect, animal, plant, bird or fish when necessary to protect the public interest. (*Coelho* v. *Truckell* (1935) 9 Cal.App.2d 47, 52-54 [48 P.2d 697] and cases cited therein; see also *House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 391 [153 P.2d 950]; *Adams* v. *Shannon* (1970) 7 Cal.App.3d 427, 432-433 [86 Cal.Rptr. 641]; *Irvine* v. *Citrus Pest Dist.* (1944) 62 Cal.App.2d 378, 384 [144 P.2d 857].)

The Legislature has declared that the protection and conservation of fish is of the utmost public interest. The Legislature also has delegated to the Department of Fish and Game the power to determine when a particular species of fish is unduly preying upon any other species of fish and the further power to kill the predatory fish. The power thus vested in the department necessarily includes the development and implementation of an appropriate program to abate or eradicate the predatory fish.

Pursuant to the powers delegated to it, then, the Department of Fish and Game, having determined that white bass are a danger to the fish and fisheries in the Sacramento-San Joaquin Delta and, if not eradicated, to the fish and fisheries of northern California, may promulgate a program designed to destroy the white bass currently in the waters of California.

■ We hold that section 6616 has no application to the State of California or to state agencies engaged in the proper exercise of the police powers of the state.

We have considered but, upon the basis of our holding, find that discussion of other arguments presented by the parties would serve no useful purpose.

The peremptory writ is vacated and the trial court is directed to enter its order denying the writ.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.