588 P.2d 358

**STATE of Arizona, Appellee,**

v.

**Harlan L. JACOBSON, Appellant.**

**No. 1 CA–CR 3002.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 26, 1978.

Rehearing Denied Nov. 15, 1978.

Review Denied Dec. 12, 1978.

Andrew Baumert, City Atty. by Harry Rubinoff, Asst. City Prosecutor, Phoenix, for appellee.

Theodore C. Jarvi, Scottsdale, for appellant.

## OPINION

HAIRE, Presiding Judge.

The appellant was charged in Phoenix City Court with violations of §§ 29–10, 29–11, and 29–60 of the Phoenix Sign Ordinance No. G–1508 (Nov. 18, 1975), *codified at* ch. 29 of the Phoenix City Code. The charges related to the display of commercial sign boards mounted on appellant's vehicle, a Toyota pickup truck. Evidence produced in city court indicated that on various dates appellant had left his vehicle parked on private property adjacent to city streets without having obtained permits for the display of his commercial signs at those locations.

After finding appellant guilty of all charges, the city magistrate suspended the imposition of sentence and placed appellant on summary probation for a period of 180 days. Appellant appealed his conviction to the superior court pursuant to A.R.S. § 22–371. His conviction was affirmed.[1] Appellant has now appealed to this Court pursuant to A.R.S. § 22–375, and raises four questions for our consideration: (1) Does Ordinance G–1508 exceed the power of the City of Phoenix insofar as it attempts to regulate signs attached to operational motor vehicles? (2) Are the provisions of Ordinance G–1508 which regulate signs on operational motor vehicles preempted by the State motor vehicle laws? (3) Are the provisions of Ordinance G–1508 regulating signs on motor vehicles unconstitutionally vague? and (4) Did the trial court err in determining that appellant failed to meet the conditions for an exemption from the ordinance's permit requirements?

Appellant's right to appeal his conviction is found in A.R.S. § 22–375, which restricts our review to questions involving the validity of the challenged ordinance. *State v. Jean*, 98 Ariz. 375, 405 P.2d 808 (1965). Beyond the scope of our review are questions relating to the sufficiency of the evidence to sustain appellant's conviction. *See State v. Owens*, 114 Ariz. 565, 562 P.2d 738 (Ct.App.1977). Consequently, we will not consider appellant's fourth question.

Before considering the first three questions raised by appellant, we will briefly describe the regulatory scheme of Ordinance G–1508. Section 29–11 provides that:

"Except as provided in Section 29–3 of this ordinance, it shall be unlawful to display, erect, relocate, or alter, except for copy changes, any sign without first obtaining a permit from the Building Official."

"Sign" is defined in § 29–10 as:

"Any identification, description, illustration, symbol or device which is affixed directly or indirectly upon a building, vehicle, structure or land and which identifies or directs attention to a product, place, activity, person, institution, or business."

Sections 29–46 to 29–57 regulate the types of signs that may exist in the city's various zoning districts. Section 29–11(e) requires that the Building Official (Director of Building Safety) review each sign application to insure conformity with the sign ordinance. Section 29–60 declares violation of the sign ordinance a misdemeanor and makes each day that the offense continues a separate violation. A number of exceptions are made to the application of this ordinance in § 29–3. An exception relevant to the issues presented on this appeal is 29–3(a)(8) which states that the ordinance shall not apply to:

---

1. It was held in *State v. Anderson*, 9 Ariz.App. 42, 449 P.2d 59 (1969), that the superior court was without power to merely affirm the lower court's judgment. However, A.R.S. § 22–374 was subsequently amended to provide express sanction for an affirmance or reversal of the court of origin. Therefore, there is no impediment to our jurisdiction.

68

"Signs on a truck, bus, car, boat, trailer or other motorized vehicle and equipment provided all the following conditions are adhered to:

A. Primary purpose of such vehicle or equipment is not the display of signs.

B. Signs are painted upon or applied directly to an integral part of the vehicle or equipment.

C. Vehicle/equipment is in operating conditions, currently registered and licensed to operate on public streets when applicable, and actively used in the daily function of the business to which such signs relate.

D. Vehicles and equipment are not used primarily as static displays, advertising a product or service, nor utilized as storage, shelter or distribution points for commercial products or services for the general public.

E. During periods of inactivity exceeding five work days such vehicle/equipment are not so parked or placed that the signs thereon are displayed to the public. Vehicles and equipment engaged in active construction projects and the on-premise storage of equipment and vehicles offered to the general public for rent or lease shall not be subjected to this condition."

## I. DOES THE ORDINANCE EXCEED THE CITY'S POWERS?

It is a fundamental rule that municipal corporations have no inherent police power, and that their powers must be delegated to them by the constitution or laws of the state. E. g., *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 439 P.2d 290 (1968). The city of Phoenix, as authorized by Ariz.Const. art. 13, § 2, has adopted a city charter as its organic law. As a "charter" city, Phoenix may exercise all the powers authorized by its charter, provided those powers are not inconsistent with the Arizona Constitution or the general laws of this state. *See* A.R.S. § 9–284; *Shaffer v. Allt,*

25 Ariz.App. 565, 567, 545 P.2d 76, 78 (1976); *Gardenhire v. State*, 26 Ariz. 14, 221 P. 228 (1923). Chapter 4, § 2(17) of the Phoenix Charter provides that the city council shall have the power "to regulate, license or prohibit the construction and use of billboards and signs." Subsection 2(70) of ch. 4 provides:

"The City of Phoenix shall have all the rights and powers granted or to be granted to charter cities, and to cities and towns incorporated under the provisions of Title 9, Arizona Revised Statutes."

Within Title 9, A.R.S. § 9–462.01(A)(2) grants to the legislative body of any municipality the power to "[r]egulate signs and billboards".[2]

The city's general power to regulate signs is thus established. However, appellant asks the more particular question: Is the city empowered to regulate signs on operational motor vehicles? Appellant contends that the sign ordinance, being an exercise of the city's zoning power, is limited to the traditional objects of zoning regulations—land, land use and buildings. He argues that the grant of authority to regulate signs and billboards in A.R.S. § 9–462.01 is part of a general grant of zoning power and does not include the regulation of signs on motor vehicles. We are unable to agree with this limitation on the city's power. First, we note that A.R.S. § 9–462.01 makes no distinction between signs affixed to land or buildings and signs placed on movable vehicles. Second, the power of the city of Phoenix to regulate signs is also conferred by ch. 4, § 2(17) of the city charter. This latter grant of authority is not even implicitly tied to the zoning power. Third, the regulation of signs is not invariably an exercise of zoning power, *see Railway Express Agency v. People of New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949), even where the signs are firmly planted in the ground. *See City of Escondido v. Desert Outdoor Advertising, Inc.*, 8 Cal.3d 785, 505 P.2d 1012, 106 Cal.Rptr. 172,

2. In *City of Mesa v. Home Builders Association of Central Arizona, Inc.*, 111 Ariz. 29, 523 P.2d 57 (1974), the Supreme Court implicitly approved the incorporation by reference in a city charter of powers granted to cities and towns in Title 9 of the Arizona Statutes.

cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973). The subject ordinance, although similar in many ways to a zoning ordinance, is in many respects unlike traditional zoning regulations. Finally, we need not consider whether the city of Phoenix has the power to regulate the signs that may be displayed on vehicles using the public streets. Appellant was cited for sign violations after he had parked his sign-laden vehicle in full public view on private land for substantial periods of time.

## II. IS THE CITY'S ORDINANCE PRE-EMPTED BY STATE LAW REGULATING MOTOR VEHICLES?

■ The precise issue presented is whether state statutes concerning motor vehicles have preempted the subject of the regulation of signs on motor vehicles which have been parked on private property. Appellant argues that Title 28 of the Arizona Revised Statutes, and particularly §§ 28–921 to 28–964 (which specify various types of equipment which are required or prohibited on motor vehicles), is such a complete and comprehensive scheme of motor vehicle regulation that municipalities may not enact ordinances regulating signs that may be placed on motor vehicles. Appellant directs our attention to A.R.S. § 28–626, which provides that "no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of this chapter unless expressly authorized by this chapter."

This Court has stated the rule regarding preemption:

"[B]oth a city and state may legislate on the same subject when that subject is of local concern or when, though the subject

is not of local concern, the charter or particular state legislation confers on the city express power to legislate thereon; but where the subject is of statewide concern, and the legislature has appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid." *Phoenix Respirator & Ambulance Service, Inc. v. McWilliams,* 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970).

*See, e. g., Clayton v. State,* 38 Ariz. 466, 300 P. 1010 (1931); *City of Tucson v. Tucson Sunshine Climate Club,* 64 Ariz. 1, 164 P.2d 598 (1945). Thus, for state legislation to preempt local legislation two conditions must concur: (1) the subject must be of statewide concern; and (2) the state legislation must have appropriated the field.

■ We need not decide whether the regulation of vehicle signs is a matter of statewide concern, since we conclude that the state has not appropriated the field of sign regulation presented by the facts of this case.[3]

■ There is no direct conflict between the Phoenix sign ordinance and the state transportation code. We must then consider whether the state legislation has so completely occupied the field that it becomes the sole and exclusive law on the subject, leaving no room for any supplementary or additional local regulation. *See Pulcifer v. Alameda County,* 29 Cal.2d 258, 175 P.2d 1 (1946); *California Water & Telephone Co. v. Los Angeles County,* 253 Cal. App.2d 16, 61 Cal.Rptr. 618 (1967). As applied to the facts of this case, the field covered by the Phoenix sign ordinance has not been preempted by state legislation.

3. Appellant makes a number of arguments based upon an expansive interpretation of the sign ordinance. For instance, appellant argues that the city might try to enforce the sign ordinance against persons driving their vehicles on the city streets. However, appellant's violation involved parking his vehicle on private property in such a manner that it functioned as a stationary sign. Indeed, on one occasion, appellant was seen driving to his chosen location in his sign-bearing Toyota, towing a Volkswagen. Appellant parked the Toyota and drove off in the Volkswagen.

In our opinion, appellant should not be allowed to claim that the ordinance might be preempted if it were to be applied to other circumstances. The basis of the preemption issue is the constitutional allocation of power between various levels of government, and ordinarily persons engaged in strictly commercial speech will not be allowed to assert that a legislative enactment might be unconstitutional if applied to the conduct of other persons. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

The state has not regulated every type of object that may be placed on a motor vehicle. *See* A.R.S. § 28–921(B). Sections 28–921 to 28–964 are a legislative attempt to regulate items of equipment which are relevant to the safe operation of motor vehicles: headlights, for example. The only connection between the equipment regulated by §§ 28–921 to 28–964 and vehicle-mounted signs is the motor vehicle itself. The mere fact that state and local legislation touch upon a common element does not mean that one has preempted the other. For instance, in *Russo v. City of Tucson*, 20 Ariz.App. 401, 513 P.2d 690 (1973), the city of Tucson was permitted to impose an occupational tax on attorneys despite the fact that the state possessed the exclusive power to regulate and license persons entitled to practice law.

We also note that appellant's violation of the ordinance occurred while parked on private property, where the state's motor vehicle laws have limited application. *See, e. g.,* A.R.S. §§ 28–621, 28–921.

We conclude that it was not the intent of the state legislature to appropriate the field of vehicle-mounted signs. *See City of Tucson v. Tucson Sunshine Climate Club*, 64 Ariz. 1, 7, 164 P.2d 598, 601 (1945).

## III.  IS THE ORDINANCE UNCONSTITUTIONALLY VAGUE?

Appellant contends that Ordinance G–1508 violates his due process rights because the ordinance is so vague that men of common intelligence cannot understand what is proscribed. Appellant's vagueness attacks focus on two aspects of the sign ordinance: (1) the persons who are subject to criminal penalties; and (2) the circumstances under which one may qualify for an exemption from the ordinance's requirements. The essential test of vagueness is whether the legislative enactment may be understood by persons of common intelligence. *State v. Sanner Contracting Co.*, 109 Ariz. 522, 514 P.2d 443 (1973); *State v. Jacobs*, 119 Ariz. 30, 579 P.2d 68 (1978); *see Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

The constitutional guarantees of due process dictate that a state may not hold an individual criminally responsible for conduct that the individual could not reasonably understand to be forbidden. *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). Laws creating new crimes should be very definite and easily understood by common men. *State v. Menderson*, 57 Ariz. 103, 111 P.2d 622 (1941).

Laws need not be drafted with mathematical certainty, however. *State v. Sanner Contracting Co., supra.* Uncertainties lurk in most English words and phrases, *Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945), and due process does not invalidate every statute that might have been drafted with greater precision. *See Rose v. Locke, supra.* In resolving a vagueness challenge, courts may properly consider the difficulties encountered by a legislative body in expressing certain concepts. *State v. Cole*, 18 Ariz.App. 237, 501 P.2d 413 (1972).

Appellant argues that the ordinance does not make clear upon whom criminal penalties will fall. He points to § 29–11(a) which states that:

"An application for a [sign] permit shall be made by the owner, tenant, or lessee of the property on which the sign is located, or his authorized agent, or a contractor licensed by the State of Arizona, or by a registered architect or engineer."

Appellant contends that any of these persons might be cited for a sign violation, and because of this the ordinance is vague. The quoted language, however, merely specifies who may apply for a sign permit. The initial paragraph of § 29–11 sets forth the act that will constitute a violation of the ordinance:

"It shall be unlawful to display, erect, relocate, or alter, except for copy changes, any sign without first obtaining a permit from the Building Official."

Thus, anyone committing such an act is subject to criminal sanction. We do not find this portion of the ordinance unconstitutionally vague.

A more serious vagueness attack is leveled at § 29–3(a)(8), which provides that

vehicle signs are exempt from the ordinance if five conditions are met. Since all five conditions must be satisfied, vagueness in any one of them would be fatal to the ordinance. Appellant contends that the first condition, that the "[p]rimary purpose of such vehicle or equipment is not the display of signs", is vague.

The phrase "primary purpose" is not scientifically precise. Nevertheless, it has been held that there is no legal obscurity in the meaning of the words "primary" or "primarily". *Brennan v. Harrison County, Mississippi*, 505 F.2d 901, 903 (5th Cir. 1975). In various contexts "primarily" has been held to mean "of first importance," "principally," "essentially," or "fundamentally." *See also* Webster's Third New International Dictionary of the English Language (1969). "Primary purpose" has been defined as " 'that which is first in intention; which is fundamental.' " *Pacific Northwest Alloys, Inc. v. State*, 49 Wash.2d 702, 705, 306 P.2d 197, 199 (1957), *quoting* Black's Law Dictionary (4th ed. 1951).

One Arizona case has upheld the phrase "primary business" against the charge of vagueness. In *State v. Direct Sellers Association*, 108 Ariz. 165, 494 P.2d 361 (1972), the court considered the constitutionality of the Arizona statutes regulating home solicitation sales. Violations of these statutes were designated misdemeanors. There, as here, the statutes provided an exception from regulation if certain conditions were satisfied. One of the necessary conditions was that the seller's primary business be selling goods at a fixed location. The court rejected vagueness challenges to "primary business" and other phrases, recognizing that "[c]omplete specificity as to every word in an act, is impossible of attainment." 108 Ariz. at 169, 494 P.2d at 365.

Although situations may occur where it is difficult to determine whether the primary purpose of a vehicle is the display of a sign, this does not mean that the ordinance is unconstitutionally vague.

"The Constitution only requires that language convey a sufficiently definite warning as to proscribed conduct when measured by common understanding and practices. That there will be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense [Citation omitted]." *State v. Cota*, 99 Ariz. 233, 236, 408 P.2d 23, 26 (1965).

Finally, we need not consider whether there is some vagueness in the ordinance in the various hypothetical situations raised by appellant. Appellant's conduct falls within the clearly defined core of this ordinance, and he has no standing to complain about possible vagueness in more borderline cases. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *State v. Hagen*, 27 Ariz.App. 722, 558 P.2d 750 (1976); *State v. Duran*, 118 Ariz. 239, 575 P.2d 1265 (Ct.App.1978).

Appellant's conviction and sentence are affirmed.

FROEB, C. J., and DONOFRIO, J., concur.